# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRENDA ZACHARY** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 17-3952** |
| **v.** | : | |
| | : | |
| **MIDLAND FUNDING, LLC, *et al.*** | : | |
| *Defendants* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                                   JULY 18, 2018

# MEMORANDUM OPINION

**INTRODUCTION**

On July 27, 2017, Plaintiff Brenda Zachary ("Plaintiff") filed this civil action against Defendants Midland Funding LLC, Midland Credit Management, Inc., and Encore Capital Group, Inc. (collectively, "Defendants") in the Court of Common Pleas of Philadelphia County, Pennsylvania, alleging violations of, *inter alia*, the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.,* Pennsylvania's Fair Credit Extension Uniformity Act (the "FCEUA"), 73 Pa. Cons. Stat. § 2270.1 *et seq.,* and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. § 201-1 *et seq*. [ECF 1].[1] Before this Court is a *motion to dismiss* filed by Defendants pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) in which Defendants seek the partial dismissal of Counts I, II, and III of Plaintiff's complaint, and the dismissal of Counts IV, V, and VI of the complaint in their entirety. [ECF 5]. Plaintiff has filed a response opposing the motion. [ECF 6].[2] The issues in

---

[1] Defendants removed the action to this Court on September 5, 2017, pursuant to 28 U.S.C. § 1446(b).

[2] In ruling on the present motion, this Court has also considered Defendants' reply brief. [ECF 9].

the motion to dismiss have been fully briefed by the parties and are ripe for disposition. For the reasons set forth, Defendants' motion to dismiss is granted.

**BACKGROUND**

In the complaint, Plaintiff asserts claims for violations of the FDCPA (Count I), violations of the FCEUA (Count II), violations of the UTPCPL (Count III), defamation (Count IV), abuse of process (Count V), and violations of the Fair Credit Reporting Act (the "FCRA") (Count VI). These claims are premised upon Defendants' efforts to collect certain consumer debts owed by Plaintiff, including, *inter alia*, the filing of a debt collection lawsuit in Philadelphia Municipal Court. As noted, Defendants moved to dismiss these claims in part. When ruling on a motion to dismiss, this Court must accept as true all factual allegations in the Complaint and construe these facts in the light most favorable to Plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). The following is a summary of the relevant allegations in Plaintiff's complaint; *to wit*:

> Defendants are engaged in the business of purchasing and collecting unpaid consumer debts. (Compl. at ¶ 7). On September 20, 2016, Defendants filed a lawsuit against Plaintiff in Philadelphia Municipal Court (the "Debt Collection Lawsuit"), in which they sought damages in the amount of $1,156.21, which included, *inter alia*, damages that had accumulated as a result of Plaintiff's alleged default on a Citibank, N.A./Sears MasterCard credit account (the "Citibank Account"). (*Id.* at ¶ 12). Plaintiff retained counsel and contested Defendants' claim in the Debt Collection Lawsuit. When the case was scheduled for trial, (*id.* at ¶ 13), Defendants failed to produce credible, competent and/or sufficient evidence of the alleged debt, and judgment was entered in favor of Plaintiff. (*Id.*). Defendants did not appeal this judgment, which became final on March 5, 2017. (*Id.* at ¶ 14).
>
> Plaintiff alleges that Defendants failed to notify credit reporting agencies that the alleged debt was in dispute, (*id.* at ¶ 15), and that, despite the entry of judgment in Plaintiff's favor in the Debt Collection Lawsuit, Defendants continue to make false reports to credit reporting agencies in which they characterize Plaintiff's account as past due. (*Id.* ¶ 16). Plaintiff avers that Defendants have failed to prove they are the assignees and/or successors-in-interest to Plaintiff's original creditor, Citibank, N.A., (*id.* at ¶ 21), and that even if they are the

assignees and/or successors-in-interest, they have used unfair and/or unconscionable means to collect the debt. (*Id.* at ¶ 23). Plaintiff further alleges that Defendants have made harassing phone calls to her residential and/or cellular telephones after being advised to cease and desist making such calls. (*Id.* at ¶ 24).

Defendants removed the case to this court on September 5, 2017. [ECF 1]. Thereafter, Defendants filed the instant motion to dismiss pursuant to Rule 12(b)(6). [ECF 5]. As noted, Plaintiff filed a response in opposition. [ECF 6].

**LEGAL STANDARD**

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler*, 578 F.3d at 210-11 (citing *Iqbal*, 556 U.S. at 677). The court must determine whether the plaintiff has pled facts sufficient to show a plausible entitlement to relief. *Id.* at 211. If the pled facts only allow the court to *infer the mere possibility* of misconduct, then the complaint has only alleged, and not *shown*, that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)) (emphasis added). Thus, the plaintiff "must allege facts sufficient to 'nudge [his or her] claims across the line from conceivable to plausible.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. After construing the complaint in the light most favorable to the plaintiff, if the court finds that the plaintiff could not be entitled to relief, it can dismiss the claim. *Fowler*, 578 F.3d at 210.

While complaints and submissions filed by *pro se* litigants are subject to liberal interpretation and are held "'to less stringent standards than formal pleadings drafted by lawyers,'" *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), the court still must ensure that a *pro se* complaint contains "'sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 193 (citing *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

As noted, the Complaint asserts six causes of action, each premised upon Defendants' attempts to collect certain debts allegedly owed by Plaintiff. Defendants move to partially dismiss Counts I through III, and dismiss Counts IV through IV in their entirety. This Court will address each cause of action and the relevant arguments concerning the dismissal of each claim in turn.

*Plaintiff's FDCPA Claims (Count I)*

At Count I of the complaint, Plaintiff alleges that Defendants violated §§ 1692e, 1692e(2), 1692e(10), and 1692f(1) of the FDCPA by, *inter alia*, failing to "produce credible, competent and/or sufficient evidence of the alleged debt" during the Municipal Court litigation and failing "to prosecute its claim" at trial. (*See* Compl. at ¶¶ 2, 26). Defendants move to dismiss Plaintiff's FDCPA claim, in part, arguing that, as a matter of law, the commencement of a lawsuit without supporting evidence does not constitute the type of harassing, abusive, or dishonest conduct proscribed by the FDCPA. This Court agrees.

The FDCPA protects consumers from "abusive, deceptive or unfair debt collection practices by debt collectors." *Piper v. Portnoff Law Assocs., Ltd.,* 396 F.3d 227, 232 (3d Cir. 2005). The FDCPA prohibits three general categories of conduct by debt collectors: (1) harassment, oppression, or abuse; (2) false, deceptive, or misleading representations; and (3) unfair or unconscionable practices. *See* 15 U.S.C. §§ 1692d, 1692e, 1692f.

Plaintiff alleges that Defendant violated §§ 1692e and 1692f by filing the Debt Collection Lawsuit without sufficient evidence to support its claims against Plaintiff. Section 1692e

prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The section also includes a non-exhaustive list of conduct that violates this general prohibition. *Id.* In her claim, Plaintiff specifically relies on § 1692e(2), which prohibits "[t]he false representation of the character, amount, or legal status of any debt," and § 1692e(10), which prohibits, *inter alia,* "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt . . . ." *Id.* §§ 1692e(2), 1692e(10). Section 1692f prohibits "unfair or unconscionable means to collect or attempt to collect any debt" and provides a non-exhaustive list of examples of prohibited conduct. *Id.* § 1692(f).

From a careful review of the allegations of the complaint, it is apparent that Plaintiff's FDCPA claim and her contention that Defendants violated §§ 1692e, 1692e(2), 1692e(10), and 1692f(1), rest primarily on Defendant's alleged act of filing and pursuing the Debt Collection Lawsuit against Plaintiff in state court. Nowhere in the complaint has Plaintiff alleged that Defendants' claims in the Debt Collection Lawsuit were frivolous or baseless, or that Defendants lacked a good faith basis to file that lawsuit. Without more, the allegation that Defendant filed and pursued the underlying lawsuit without sufficient evidence fails to state a claim that the lawsuit was a false, deceptive, or misleading representation or means to collect a debt, as prohibited by §§ 1692e, e(2), e(10), or that it constituted an unconscionable and unfair practice as proscribed by § 1692f(1). *See Eades v. Kennedy, PC Law Offices,* 799 F.3d 161, 172 (2d Cir. 2015) (dismissing FDCPA claim predicated on the initiation of a debt collection lawsuit on the grounds that the complaint did not allege facts tending to show the lawsuit was frivolous or baseless); *Harvey v. Great Seneca Fin. Corp.,* 453 F.3d 324, 325 (6th Cir. 2006) (rejecting argument that "a lawsuit filed without the immediate means of proving the existence, amount, or

5

true owner of the debt" violates § 1692(e)). Accordingly, Plaintiff's FDCPA is dismissed to the extent it is predicated on the commencement and prosecution of the Debt Collection Lawsuit.[3]

*Plaintiff's UTPCPL and FCEUA Claims (Counts II and III)*

At Counts II and III of the complaint, Plaintiff asserts state statutory claims under the FCEUA, 73 Pa. Cons. Stat. § 2270.1 *et seq.* (Count II), and the UTPCPL, 73 Pa. Cons. Stat. § 202-1 *et seq.* (Count III). Defendants move to dismiss these state law claims, *in part*, on two grounds: (1) that these state law claims are premised partially upon the same conduct that underlies Plaintiff's FCRA's claim asserted in Count VI of the complaint and are, thus, preempted by the FCRA; and (2) that the initiation and prosecution of the Debt Collection Lawsuit does not constitute a violation of the FDCPA, and, consequently, does not violate the FDCEUA and/or the UPTCPL. Plaintiff does not address either argument in her response to Defendants' motion to dismiss.

A review of the pertinent allegations at Counts II and III is necessary for a resolution of Defendants' motion to dismiss. Therein, Plaintiff alleges that Defendants violated the FCEUA and the UTPCPL by (1) continuing to make false reports to credit reporting agencies implying that Plaintiff's Citibank account is past due, (2) initiating and prosecuting the Debt Collection Lawsuit without sufficient evidence of the alleged debt, and (3) violating certain provisions of the FDCPA. (*See* Compl. at ¶¶ 13, 16, 28-32).

Defendants argue to the extent that Counts II and III are premised upon inaccurate or false reporting to credit reporting agencies, they are preempted by the FCRA. This Court agrees.

---

[3] Plaintiff also alleges that Defendants violated §§ 1692e(8) and 1692d(5) of the FDCPA by failing to communicate to certain consumer reporting agencies that Plaintiff's debt was in dispute and placing a number of telephone calls to Plaintiff's home with the intent to "annoy, abuse, or harass" her. (*See* Compl. at ¶¶ 26(f), (g)). Defendants have not moved to dismiss this portion of Plaintiff's FDCPA's claim, and, accordingly, Plaintiff's FDCPA claim survives to the extent that it alleges that Defendants violated §§ 1692e(8) and 1692d(5) of the FDCPA.

The FCRA, in its current form, contains two preemption provisions. When the FCRA was first enacted by Congress in 1968, "it had only one section dealing with the preemption of state law claims, 15 U.S.C. § 1681h(e)." *Manno v. Am. Gen. Fin. Co.,* 439 F. Supp. 2d 418, 423 (E.D. Pa. 2006). Section 1681h(e) provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (2003). In 1996, Congress amended the FCRA to add an additional preemption provision, codified at 15 U.S.C. § 1681t(b)(1)(F). Section 1681t(b)(1)(F) provides, in relevant part, that:

> [n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under Section 1681s-2 of this title, relating to the responsibilities of any persons who furnish information to consumer reporting agencies.

15 U.S.C. § 1681t(b)(1)(F) (1996). This broader provision does not include a malice or willfulness requirement and generally preempts "the laws of any State." *Id.* Defendants argue that this later-enacted preemption provision necessitates the partial dismissal of Counts II and III because Plaintiff has asserted claims against Defendants under the FCRA. This Court agrees. Section 1681t(b)(1) compels the dismissal of Plaintiff's FCEUA and UPTCPL claims to the extent that these claims are premised upon subject matter regulated under § 1681s-2 of the FCRA. *See Vullings v. Trans Union, LLC*, 115 F. Supp. 3d 538, 542 (E.D. Pa. 2015); *Jaramillo v. Experian Info. Solutions, Inc.,* 155 F. Supp. 2d 356, 361-62 (E.D. Pa. 2001) (concluding that "[i]t is clear from the face of [§ 1681t(b)(1)(F)] that Congress wanted to eliminate all state causes

7

of action relating to the responsibilities of person who furnish information to consumer reporting agencies. Any other interpretation would fly in the face of the plain meaning of the statute"); *see also Purcell v. Bank of America*, 659 F.3d 622, 625 (7th Cir. 2011) (holding that § 1681t(b)(1)(F) preempts all state law causes of action against furnishers of information).[4] Plaintiff's allegations that Defendants falsely or inaccurately reported the past due status of her Citibank account to credit reporting agencies falls squarely within the subject matter federally regulated under § 1681s-2. *See* 15 U.S.C. § 1681s-2(a)(1)(A) (providing that "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is *inaccurate*") (emphasis added); *see also Purcell v. Universal Bank, N.A.,* 2003 WL 1962376, at *5 (E.D. Pa. Apr. 28, 2003) (concluding that § 1681t(b)(1)(F) preempts "any state law claims based upon reports to credit agencies" by furnishers of information). Accordingly, Counts II and III of the complaint are preempted by § 1681t(b)(1)(F) of the FCRA, and must be dismissed to the extent that they are premised upon inaccurate or false reporting of Plaintiff's consumer credit accounts.

This Court's analysis of Counts II and III, however, does not end here. This Court must determine whether the remaining factual allegations in the complaint state a plausible claim for relief under either the FCEUA or the UTPCPL. Defendants have moved to dismiss the portion of Counts II and III that relate to the initiation and prosecution of the Debt Collection Lawsuit as

---

[4] Though neither party addresses the issue in their briefs, this Court concludes that Defendants are "furnishers of information" for the purposes of the FCRA. While the FCRA does not explicitly define the term "furnisher of information" as it is used in § 1681t(b)(1)(F), it is generally understood to encompass "an[y] entity which transmits information concerning a particular debt owed by a consumer to a consumer reporting agency." *Donohue v. C. Blosenski Disposal Co.,* 2006 WL 3422888, at *1 (E.D. Pa. Nov. 28, 2006) (citation omitted). In the Complaint, Plaintiff alleges Defendants, *inter alia*, have made false reports to various consumer reporting agencies and/or credit bureaus, (*see* Compl. at ¶ 16), and, thus, Plaintiff has not, and cannot, dispute that Defendants qualify as "furnishers of information" as that term is used in § 1681t(b)(1)(F).

violating the FCEUA and the UTPCPL because those allegations are predicated entirely upon violations of §§ 1692e and 1692f of the FDCPA.  This Court agrees.

In general, "the FCEUA, Pennsylvania's analogue to the FDCPA, prohibits 'unfair methods of competition and unfair or deceptive acts or practices with regards to the collection of debts.'" *Kaymark v. Bank of Am., N.A.,* 783 F.3d 168, 182 (3d Cir. 2015) (quoting 73 Pa. Cons. Stat. § 2270.2)).  The UTPCPL is designed to protect consumers from fraudulent and deceptive business practices, *Neal v. Bavarian Motors, Inc.,* 882 A.2d 1022, 1029 (Pa. Super. Ct. 2005), and prohibits "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" in the conduct of trade or commerce.  73 Pa. Cons. Stat. § 201-2(4)(xxi). Under the UTPCPL, a deceptive act is "conduct that is likely to deceive a consumer acting reasonably under similar circumstances."  *Seldon v. Home Loan Servs., Inc.,* 647 F. Supp. 2d 451, 470 (E.D. Pa. Aug. 4, 2009).

A debt collector's violation of the FDCPA is a *per se* violation of the FCEUA.  *See* 73 Pa. Cons. Stat. § 2270.4(a) (providing that "[i]t shall constitute an unfair or deceptive debt collection act or practice under this act if a debt collector violates *any* of the provisions of the [FDCPA]"); *see also Donohue v. Reg'l Adjustment Bureau, Inc.,* 2013 WL 1285469, at *7 (E.D. Pa. Mar. 28, 2013) (quoting *Sasscer v. Donnelly,* 2011 WL 6780954, at *3 (M.D. Pa. Dec. 27, 2011)); *Glover v. F.D.I.C.,* 698 F.3d 139, 152 (3d Cir. 2012).  It follows, then, that the portion of Plaintiff's FCEUA and UPTCPL claims that allege that the initiation and prosecution of the Debt Collection Lawsuit constituted a violation of §§ 1692e and 1692f of the FDCPA must be dismissed since that portion of Plaintiff's FDCPA has been dismissed.  However, because this Court has not dismissed Plaintiff's FDCPA claims in their entirety, the remainder of Plaintiff's FCEUA and UTPCPL claims are not dismissed at this stage of the litigation.  *See Yelin v. Swartz,*

790 F. Supp. 2d 331, 336 (E.D. Pa. 2011) (denying motion to dismiss FCEUA claim because plaintiff's FDCPA claim was valid); *Stuart v. AR Res., Inc.,* 2011 WL 904167, at *5 (E.D. Pa. Mar. 16, 2011) (denying motion to dismiss UTPCPL claim and stating plaintiff need only establish a viable claim under the FDCPA in order to state sufficient claims under the FCEUA and UTPCPL."); *Yentin v. Michaels, Louis & Assocs., Inc.,* 2011 WL 4104675, at *1 (E.D. Pa. Sept. 15, 2011) (same). Accordingly, to the extent that Plaintiff's FCEUA and UTPCPL's claims are premised upon Defendants' alleged violations of §§ 1692e(8) and 1692d(5) of the FDCPA (the portions of Plaintiff's FDCPA claim that Defendants have not sought to dismiss), they may proceed.

### *Plaintiff's Defamation Claims (Count IV)*

Defendants move to dismiss Plaintiff's defamation claims, on the grounds that they are preempted by the FCRA. In response, Plaintiff appears to concede that the FCRA preempts her defamation claims, and agrees to withdraw Count IV of the Complaint. Based upon Plaintiff's response, this Court will deem Count IV of the complaint withdrawn.

### *Plaintiff's Abuse of Process Claims (Count V)*

Defendants also move to dismiss Count V of the complaint, an abuse of process claim against all Defendants under Pennsylvania law, on the grounds of a lack of sufficient factual support.[5] This Court agrees.

To state a claim for abuse of process under Pennsylvania law, a plaintiff must allege "that the defendant (1) used a legal process against the plaintiff (2) primarily to accomplish a purpose for which the process was not designed, and (3) harm has been caused to the plaintiff." *Shiner v. Moriarty,* 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998). "The gravamen of abuse of

---

[5] Plaintiff does not address this argument in her response to Defendants' motion.

process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure." *Id.* Thus, a plaintiff must allege "some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process[;] . . . there is not liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Hart v. O'Malley,* 647 A.2d 542, 552 (Pa. Super. Ct. 1994) (quoting *Shaffer v. Stewart*, 473 A.2d 1017, 1019) (Pa. Super. Ct. 1984)) (internal quotations omitted).

Here, Plaintiff alleges that Defendants abused the civil process by merely initiating the underlying lawsuit in Philadelphia Municipal Court with the object of obtaining a default judgment "and/or unlawfully report[ing] derogatory information about Plaintiff to credit bureaus." (Compl. at ¶ 37). Under Pennsylvania law, neither the initiation nor the prosecution of a lawsuit in itself will support a claim for abuse of process. *See, e.g., McGee v. Feege*, 535 A.2d 1020, 1024 (Pa. 1987) (distinguishing between cases involving "an improper initiation of a lawsuit as opposed to a perversion of a lawfully entered action," and concluding that only the latter category may sustain an abuse of process claim); *Todi v. Stursberg,* 2001 WL 1557517, at *2 (E.D. Pa. Dec. 4, 2001) (abuse of process claim dismissed where claim is predicated on the initiation of the instant lawsuit, and not the abuse of previously existing processes). Nowhere in the complaint has Plaintiff alleged facts from which this Court could infer that Defendants perverted the legal process after it was issued to achieve an objective for which the process was not intended. *See McGee*, 535 A.2d at 1023. Even if Defendants' motive for initiating the Debt Collection Lawsuit was not laudable, as Plaintiff alleges, it nevertheless does not give rise to a claim for abuse of process. Accordingly, Plaintiff has failed to state a claim for abuse of process under Pennsylvania law, and Count V of the Complaint is dismissed.

*Plaintiff's FCRA Claims (Count VI)*

Finally, Defendants move to dismiss Count VI of the complaint on the basis that the FCRA claims Plaintiff purports to assert therein fail as pled, as a matter of law. Plaintiff alleges that Defendants violated the FCRA by, *inter alia*, (1) failing to respond to "Plaintiff's dispute by providing competent and credible evidence of the alleged debt to either Plaintiff or the aforementioned credit agencies," (2) failing to provide "notice of this disputed matter to the [consumer reporting agencies]", as required by 15 U.S.C. § 1681s-2; (3) failing to send Plaintiff "written documentation of the debt, name of the original creditor, and other information" as required by 15 U.S.C. § 1692g, and (4) failing to provide the results of their investigation of Plaintiff's written dispute to Plaintiff, in violation of 15 U.S.C. § 1681s-2. (Compl. at ¶¶ 45-48). Defendants argue none of these contentions amounts to a violation of the FCRA.

The FCRA "was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC,* 617 F. 3d 688, 706 (3d Cir. 2010) (internal citations omitted). In drafting the statute, Congress sought "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Fuges v. Southwest Fin. Servs., Ltd.,* 707 F.3d 241, 247 (3d Cir. 2012) (quoting *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 52 (2007)). The FCRA imposes duties on two types of entities: "furnishers of information" and credit rating agencies. *See Seamans v. Temple Univ.,* 744 F.3D 853, 860 (3d Cir. 2014). Although undefined by the FCRA, "furnishers of information" is generally understood to include any entity that reports information relevant to a consumer's credit rating to credit reporting agencies. *See Harris v. Pa. Higher Ed. Assistance Agency/ Am. Educ. Servs.,* 2016 WL 3473347, at *5 n.36 (E.D. Pa. Jun. 24, 2016).

Defendants do not dispute that they are "furnishers of information" for the purpose of the statute. The duties imposed on "furnishers of information" by the FCRA are found in subsections (a) and (b) of 15 U.S.C. § 1681s-2. *See* 15 U.S.C. § 1681s-2(a)-(b); *see also Dicesari v. Asset Acceptance LLC,* 2012 WL 4108944, at *5 (E.D. Pa. Sept. 18, 2012). Plaintiff does not specify which subsection Defendants allegedly violated, which necessitates consideration of a furnisher's obligations under both subsections.

Subsection (a) of § 1681s-2 imposes certain duties on furnishers of information to ensure the accuracy of that information. Among those duties is a general prohibition on relaying any information to a consumer or credit reporting agency if the furnisher "knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). As Defendants point out, however, Subsection (a) does not avail Plaintiff here because it does not create a private cause of action for consumers. *See, e.g, Huertes v. Galaxy Asset Mgmt.,* 641 F.3d 28, 34 (3d Cir. 2011) (affirming a district court's dismissal of a plaintiff's claim under 15 U.S.C. § 1681s-2(a)(1)(A)).

Subsection (b) of § 1681s-2 relates to a furnisher's obligations after learning of inaccuracies from credit reporting agencies. Specifically, "§ 1681s-2(b) requires that furnishers take certain steps to investigate and correct inaccurate information they have already relayed to the credit rating agencies." *Burrell v. DFS Servs, LLC,* 753 F. Supp. 2d 438, 447 (D.N.J. 2010). Under Subsection (b) of § 1681s-2, a furnisher is required to perform a reasonable inquiry into customer disputes received by a consumer reporting agency. 15 U.S.C. § 1681s-2(b). However, these obligations are triggered by "indirect disputes"— that is, the receipt by a furnisher of information of notice from a consumer reporting agency that a consumer disputes certain

information. *See* 15 U.S.C. § 1681i(a)(2).[6] A furnisher must generally carry out these duties within thirty days after receiving notice of a dispute from a consumer reporting agency. *Id.* § 1681s-2(b)(2).

As noted, Plaintiff alleges that Defendants violated § 1681s-2 by "not respond[ing] to Plaintiff's dispute by providing competent and credible evidence of the alleged debt to either Plaintiff or the aforementioned consumer reporting agencies," (Compl. at ¶ 45), and by "not provid[ing] notice of [Plaintiff's dispute] to [consumer reporting agencies Equifax, Trans Union, and Innovis]." (*Id.* at ¶ 46). However, as Defendants argue, § 1681s-2(b)(1) does not require a furnisher of information to either "provide competent and credible evidence" of the debt that is in dispute or provide notice of the dispute to credit bureaus. That subsection merely requires a furnisher to "investigate the 'completeness or accuracy' of any information furnished upon

---

[6] Section § 1681s-2(b) provides that after receiving such notice, a furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
>> (i) modify that item of information;
>> (ii) delete that item of information; or
>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1).

notice of an inaccuracy [from a consumer reporting agency]." *Palouian v. FIA Card Servs.*, 2013 WL 1827615, at *2 (E.D. Pa. May 1, 2013) (citing 15 U.S.C. § 1681s-2(b)(1)).

Although Plaintiff alleges that she disputed the accuracy of her credit information with at least three consumer reporting agencies, (*see* Compl. at ¶ 44), and that Defendants thereafter failed to conduct an investigation into the accuracy and completeness of her credit information, (*id.* at ¶ 44), nowhere in her complaint does Plaintiff allege that the three consumer reporting agencies notified Defendants that Plaintiff's account was in dispute. Liability under § 1681s-2(b) is only triggered if a furnisher receives notice of the dispute from a consumer reporting agency, not from the consumer. *See* 15 U.S.C. § 1681s-2(b)(1); *see also Harris v. Pa. Higher Ed. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87, 91 (3d Cir. 2017) (noting that the duties imposed under § 1681s-2(b)(1)(A)-(E) are triggered only after a furnisher of information receives notice from a consumer reporting agency about a dispute). Accordingly, because Plaintiff's complaint does not allege that any of the three consumer reporting agencies with whom she filed a dispute gave Defendants notice of said dispute, it fails to state a claim under in § 1681s-2(b), and any claim she purports to assert under § 1681s-2(b) is dismissed.

Defendants also move to dismiss any claim Plaintiff purports to assert under the FCRA based on Defendants' failure to send "Plaintiff written documentation of the [disputed] debt, the name of the original creditor, or other information as required by the FCRA." (Compl. at ¶ 47). Plaintiff has not, and cannot, point to any particular subsection of the FCRA that contains any such requirement. While Plaintiff alleges that Defendants' failure to provide her with the aforementioned information violated 15 U.S.C. § 1692g, that subsection falls within the portion of the United States Code that codifies the FDCPA, not the FCRA. As noted, there is nothing in

§ 1681s-2(b) or any other portion of the FCRA that obligates Defendants to furnish the requested information to Plaintiff.

In sum, having considered all of the allegations of the complaint in the light most favorable to Plaintiff, Plaintiff has failed to state a claim against Defendants under the FCRA, and, accordingly, Count VI of the Complaint is dismissed.

**CONCLUSION**

For the reasons provided herein, Defendants' motion to dismiss is granted. Consistent with the reasoning offered herein, Plaintiff's FDCPA, FCEUA, and UTPCPL claims at Count I, II, and III are dismissed, *in part*, Count IV is deemed withdrawn, and Counts V and VI are dismissed in their entirety. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.